## UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| MICHAEL EDWARD COLLIER, EDWARD E. GRAHAM, BISHOP KENNETH R. MURRAY, BRANDON J. DAVID, CHRISTOPHER M. HARTE, HARRY STEPHEN BARTLETT, LINDA CURTIS, B. GLEN WHITLEY, GLENN MOSS ROGERS, CHRISTOPHER C. ASHBY, SCOTT RICHARD MILDER, KELTON GRAY SELIGER, CHARLES FOSTER JOHNSON, ALAN STEELMAN and SARAH STOGNER,<br><br>*Plaintiffs*,<br><br>v.<br><br>JANE NELSON, in her official capacity as the Secretary of State of the State of Texas, and DAVE NELSON, in his official capacity as the Deputy Secretary of State of the State of Texas,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil No. 1:26-cv-01574-RP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' OPPOSED MOTION FOR A PRELIMINARY INJUNCTION
## AND MEMORANDUM IN SUPPORT

David P. Whittlesey
State Bar No. 00791920
ALLEN OVERY SHEARMAN STERLING US LLP
300 West 6th Street, Suite 2250
Austin, TX 78701
Email: david.whittlesey@aoshearman.com
Tel: +1 (512) 647-1900

Michael P. Mitchell (*Pro hac vice motion pending*)
Christopher Ryan (*Pro hac vice motion pending*)
Anna Stockamore (*Pro hac vice motion pending*)
ALLEN OVERY SHEARMAN STERLING US LLP
1101 New York Avenue, NW
Washington, D.C. 20005
Email: michael.mitchell@aoshearman.com
        christopher.ryan@aoshearman.com
        anna.stockamore@aoshearman.com
Tel: +1 (202) 683-3800
Fax: +1 (202) 683-3999

Oliver Hall
*Pro hac vice motion pending*
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC, 20009
Email: oliverhall@competitivedemocracy.org
Tel: +1 (202) 248-9294

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT ........................................................................................................................... 5

    I.    Plaintiffs Are Likely to Succeed on the Merits .................................................... 5

        A.    Texas's Ban on Petitioning Until After the Primary Election or Primary Runoff Violates the First Amendment. ....................................................................................... 5

        B.    Texas's Statutory Scheme Cannot Survive *Anderson/Burdick* Scrutiny and Therefore Violates Plaintiffs' First and Fourteenth Amendment Rights. ............................................. 10

            1.    Defendants' Enforcement of §§ 142.006, 142.007 and 142.009 Severely Burdens Plaintiffs' First and Fourteenth Amendment Rights. ........................................................ 10

            2.    Enforcement of §§ 142.006 and 142.007 Against Plaintiffs Is Not Reasonably Tailored to Further Any State Interest. ................................................................................ 15

    II.    The Remaining Preliminary Injunction Factors Weigh Heavily in Plaintiffs' Favor ........ 16

        A.    Plaintiffs Will Suffer Irreparable Harm Absent The Requested Relief .......................... 16

        B.    The Equities Favor Plaintiffs ................................................................................. 16

        C.    Plaintiffs' Requested Relief is in the Public Interest .................................................. 17

RELIEF REQUESTED ............................................................................................................ 17

CONCLUSION ...................................................................................................................... 19

CERTIFICATE OF SERVICE ................................................................................................ 21

CERTIFICATE OF CONFERRAL .......................................................................................... 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Celebrezze,*
  460 U.S. 780 (1983)................................................................................................10, 11, 15

*Buckley v. Am. Const. L. Found., Inc.*,
  525 U.S. 182 (1999)........................................................................................................15, 16

*Buckley v. Valeo,*
  424 U.S. 1 (1976)..............................................................................................................6, 7

*Bullock v. Carter*,
  405 U.S. 134 ....................................................................................................................13, 14

*Burdick v. Takushi*,
  504 U.S. 428 (1992)...............................................................................................................10

*Burson v. Freeman*,
  504 U.S. 191 (1992)..................................................................................................................9

*Casarez v. Val Verde Cnty.*,
  957 F. Supp. 847 (W.D. Tex. 1997)........................................................................................5

*Constitution Party of Pa. v. Aichele*,
  757 F.3d 347 (3rd Cir. 2014) ...............................................................................................13

*Constitution Party of Pa. v. Aichele,*
  No. 12-2726, ECF No. 115 (E.D. Pa. Feb. 1, 2018C) ............................................................18

*Constitution Party of Pa. v. Cortes*,
  116 F. Supp. 3d 486 (E.D. Pa. 2015), *aff'd*, 824 F.3d 386 (3rd Cir. 2016) ............................13

*Crawford v. Marion Cnty. Election Bd.*,
  553 U.S. 181 (2008)................................................................................................................10

*De Leon v. Perry*,
  975 F.Supp.2d 632 (W.D. Tex. 2014), *aff'd sub nom. De Leon v. Abbott*, 791
  F.3d 619 (5th Cir. 2015) ...................................................................................................16, 17

*Delaney v. Bartlett*,
  370 F. Supp. 2d 373 (M.D. N.C. 2004) ..................................................................................11

*Fund Texas Choice v. Paxton*,
  658 F. Supp. 3d 377 (W.D. Tex. 2023)..................................................................................17

*Goldman-Frankie v. Austin*,
 727 F.2d 603 (6th Cir. 1984) ........................................................................18

*Graveline v. Benson*,
 430 F. Supp. 3d 297 (E.D. Mich. 2019), *aff 'd*, 992 F.3d 524 (6th Cir. 2021) ........................13

*Graveline v. Benson*,
 992 F.3d 524 (6th Cir. 2021) ........................................................................10

*Graveline v. Johnson*,
 336 F. Supp. 3d 801 (E.D. Mich. 2018)................................................................18

*Green Party of Georgia v. Kemp*,
 171 F. Supp. 3d 1340 (N.D. Ga. 2016), *aff'd*, 674 F. App'x 974 (11th Cir.
 2017) ................................................................................11, 13, 18

*Harper v. Virginia Bd. of Elections*,
 383 U.S. 663 (1966)................................................................................13

*Jenness v. Fortson*,
 403 U.S. 431 (1971)................................................................................10

*Krislov v. Rednour*,
 226 F.3d 851 (7th Cir. 2000) ........................................................................12

*Lee v. Keith*,
 463 F.3d 763 (7th Cir. 2006) ........................................................................11

*Libertarian Party of Arkansas v. Thurston*,
 962 F.3d 390 (8th Cir. 2020) ........................................................................15

*Libertarian Party of Ohio v. Blackwell*,
 462 F.3d 579 (6th Cir. 2006) ........................................................................15

*Lubin v. Panish*,
 415 U.S. 709 ................................................................................14

*MacBride v. Askew*,
 541 F.2d 465 (5th Cir. 1976) ........................................................................22

*McCarthy v. Briscoe*,
 429 U.S. 1317 (1976) (Powell, J., in chambers) ................................................................18

*Meyer v. Grant*,
 484 U.S. 414 (1988)................................................................2, 6, 7, 9

*Miller v. Hughs*,
 634 F. Supp. 3d 340 (W.D. Tex. 2022)................................................................14

iii

*Miller v. Nelson*,
   116 F.4th 373 (5th Cir. 2024) ........................................................................................12

*Nader v. Brewer*,
   531 F.3d 1028 (9th Cir. 2008) .......................................................................................11

*Norman v. Reed*,
   502 U.S. 279 (1992).......................................................................................................15

*Opulent Life Church v. City of Holly Springs, Miss.*,
   697 F.3d 279 (5th Cir. 2012) ....................................................................................16, 17

*Reform Party of Allegheny Cty. v. Allegheny Cty. Dept. of Elections*,
   174 F.3d 305 (3rd Cir. 1999) .........................................................................................15

*Storer v. Brown*,
   415 U.S. 724 (1974).......................................................................................................10

*Texans for Free Enter. v. Texas Ethics Comm'n*,
   732 F.3d 535 (5th Cir. 2013) ....................................................................................16, 17

*Texas Indep. Party v. Kirk*,
   84 F.3d 178 (5th Cir. 1996) ...........................................................................................10

*Virginian Ry. Co. v. Sys. Fed'n No. 40*,
   300 U.S. 515 (1937).......................................................................................................17

*Voting for America, Inc. v. Steen*,
   732 F.3d 382 (5th Cir. 2013) .........................................................................................16

*Williams v. Rhodes*,
   393 U.S. 23 (1968) (Harlan, J., concurring) ............................................................15, 16, 17

**Statutes**

TEX. ELEC. CODE § 142.006................................................................................1, 3, 6, 8, 9

TEX. ELEC. CODE § 142.007...............................................................................................1, 3

TEX. ELEC. CODE § 142.009................................................................................3, 4, 6, 8, 9

TEX. ELEC. CODE § 172.001...................................................................................................8

TEX. ELEC. CODE §181.006................................................................................................8, 9

TEX. ELEC. CODE § 192.032............................................................................................1, 18

**Other Authorities**

Fed. R. Evid. 401 ................................................................................................................12

Fed. R. Evid. 402 ................................................................................................................12

Texas Secretary of State, *Texas Election Results – 2014 General Election*,
    available at https://elections.sos.state.tx.us/elchist175_state.htm (last accessed
    June 19, 2026)...............................................................................................................3

Texas Secretary of State, *Texas Election Results – 2018 General Election*,
    available at https://elections.sos.state.tx.us/elchist331_state.htm (last accessed
    June 19, 2026)...............................................................................................................3

Texas Secretary of State, *Texas Election Results – 2022 November 8th General
    Election*, available at https://results.texas-
    election.com/contestdetails?officeID=1005&officeName=LIEUTENANT%20
    GOVERNOR&officeType=STATEWIDE%20OFFICES&from=race (last
    accessed June 19, 2026)................................................................................................3

Pursuant to Federal Rule of Civil Procedure 65 and Local Rule CV-65, Plaintiffs Michael Edward Collier, Edward E. Graham, Bishop Kenneth R. Murray, Brandon J. David, Christopher M. Harte, Harry Stephen Bartlett, Linda Curtis, B. Glen Whitley, Glenn Moss Rogers, Christopher C. Ashby, Scott Richard Milder, Kelton Gray Seliger, Charles Foster Johnson, Alan Steelman, and Sarah Stogner (collectively, "**Plaintiffs**") respectfully move for a preliminary injunction in this time-sensitive election law case to enjoin Defendants Jane Nelson, Secretary of State of Texas, and Dave Nelson, Deputy Secretary of State of Texas (together, "**Defendants**") from enforcing TEX. ELEC. CODE §§ 142.006–142.007 as applied to Plaintiffs in the 2026 election cycle.[1]

## **INTRODUCTION**

Something has to give.  Texas, whether by design or by neglect, has made it practically impossible for Plaintiff Michael Edward Collier to run as an Independent candidate for Lieutenant Governor in the 2026 general election.[2]  To do so, Collier must submit nomination petitions with 81,030 valid signatures from voters who did not vote in a primary election—and he has only 30 days to do it.  No Independent candidate for statewide office has ever qualified for Texas's ballot when the petitioning period was shortened to just 30 days.  Even with the full petitioning period— 113 days in 2026—the last such candidate to qualify was in 2006, 20 years ago, when only 45,540 signatures were required.  Collier must submit nearly twice that amount in a fraction of the time.

Collier is no political novice.  He has run for Lieutenant Governor twice and for State Comptroller, receiving a combined total of more than 9 million votes in those elections, and recent internal polling shows that he has a real chance to win in this election.  Collier Decl. ¶¶ 18-20.  His co-Plaintiffs—a group of Texas voters who want to vote for him—include a former State Senator,

---

[1] Hereinafter all statutory citations are to the Texas Election Code unless otherwise indicated.

[2] "Independent" refers to a candidate for public office who petitions to appear on the general election ballot without affiliating with a political party.  *See* §§ 142.001-10, 192.032.

a former State Representative, a former County Judge, a candidate for the Republican Party nomination for Lieutenant Governor, an incumbent District Attorney, a former Dallas Mayor and United States Congressman, another former United States Congressman, a former United States Ambassador, respected members of the clergy, and politically active private citizens. They are Republicans, Democrats, and Independents united in their support for Collier and in their conviction that the Constitution guarantees them the right to vote for a candidate with his demonstrated support.

Unless this Court acts, however, Plaintiffs will be unable to exercise that right, because Collier will not appear on the ballot for Lieutenant Governor. The Constitution does not permit such a result here. *First*, Texas's outright ban on petitioning prior to the primary or primary runoff violates the First Amendment because it infringes core political speech. *See Meyer v. Grant*, 486 U.S. 414, 421-22, 425 (1988). *Second*, Texas's statutory scheme is unconstitutional under the Supreme Court's *Anderson/Burdick* framework because it imposes ballot access requirements so restrictive that candidates rarely or never comply, effectively freezing the political status quo by barring Independent candidates from the ballot. Past experience—reflected in the numerous declarations and evidentiary materials submitted with this motion—demonstrates that reasonably diligent candidates cannot comply with Texas's ballot-access requirements, which exclude candidates who cannot raise and spend exorbitant sums to finance practically impossible petition drives.

As set forth below, Plaintiffs satisfy each element required for a preliminary injunction. To prevent irreparable harm to Plaintiffs, Plaintiffs respectfully request that the Court (i) direct the Defendants to place Michael Edward Collier on the general election ballot for the office of Lieutenant Governor, or (ii) in the alternative, enjoin Defendants from enforcing § 142.006

(Texas's filing deadline) and § 142.007 (Texas's signature requirement) against Collier in the 2026 election cycle.

## FACTUAL BACKGROUND

Plaintiff Mike Collier is a prominent Texas politician who ran for Lieutenant Governor in 2018 and 2022 as the Democratic Party nominee, receiving 3.86 and 3.49 million votes respectively, and for Comptroller in 2014, receiving 1.74 million votes.[3] Collier Decl. ¶¶ 6, 8, 9. Despite his proven support, Collier cannot qualify to appear on Texas's 2026 general election ballot unless he collects 81,030 signatures within 30 days, soliciting signatures only from voters who did not vote in a primary election or primary runoff. *See* §§ 142.006, 142.007, 142.009. These statutory requirements are so burdensome that no candidate in Texas history has ever met them.

A statewide petition drive at that scale within 30 days is a practical impossibility: no Independent candidate has ever successfully completed one. Winger Decl. ¶¶ 20-21; Rogers Decl. ¶ 10; Hall Decl. ¶ 5, 15,16. Indeed, no Independent candidate for statewide office has qualified even with the full petitioning period in 20 years, and the last to do so needed only 45,540 signatures. Hall Decl. ¶¶ 14-15; Curtis Decl. ¶ 7; Rogers Decl. ¶ 10.

Texas's severely burdensome statutory scheme is an outlier. No other state requires candidates in Collier's position to collect as many signatures in so short a time as Texas demands of Collier, and no other state is even close. Winger Decl. ¶¶ 20-21; Kafoury Decl. ¶ 22. As a

---

[3] *See* Texas Secretary of State, *Texas Election Results – 2018 General Election*, available at https://elections.sos.state.tx.us/elchist331_state.htm (last accessed June 19, 2026); Texas Secretary of State, *Texas Election Results – 2022 November 8th General Election*, available at https://results.texas-election.com/contestdetails?officeID=1005&officeName=LIEUTENANT%20GOVERNOR&officeType=STATEWIDE%20OFFICES&from=race (last accessed June 19, 2026); *See* Texas Secretary of State, *Texas Election Results – 2014 General Election*, available at https://elections.sos.state.tx.us/elchist175_state.htm (last accessed June 19, 2026).

3

result, statewide petition drives cannot succeed in Texas unless paid petition circulators are hired—indeed, the record demonstrates that volunteer-led petition drives have not succeeded in decades, if ever.  Hall Decl. ¶¶ 15-17; Palmer Decl. ¶ 9, 20; Buchanan Decl. ¶ 9-12; Verney Decl. ¶¶ 4,6, 18; Kafoury Decl. ¶ 19; Benedict Decl. ¶¶ 14-16; Bilyeu Decl. ¶ 22; Harrison Decl. ¶ 8; King Decl. ¶¶ 10, 15; Prior Decl. ¶ 9.  That is because collecting signatures by hand on paper petitions is laborious, time-consuming, inefficient, and expensive.  Benedict Decl. ¶¶ 20-25; Buchanan Decl. ¶¶ 15-16; Verney Decl. ¶¶ 11-12, 16-17; Kafoury Decl. ¶¶ 12-15; Redpath Decl. ¶¶ 22-28.

Petitioning in Texas is especially time-consuming and expensive due to Texas's unique primary screenout provision, *see* § 142.009, which reduces the number of eligible signers, increases the number of invalid signatures that petitioners collect, and makes petitioning on primary election day—which is by far the most productive day of a petition drive—impossible. Redpath Decl. ¶¶ 6, 9, 10, 13, 22-28; Taggart Decl. ¶¶ 11, 13; Benedict Decl. ¶¶ 6, 22; Buchanan Decl. ¶ 15; Kafoury Decl. ¶ 14.

As Texas's signature requirement for Independent candidates has steadily risen over the years (because it is based on a percentage of votes cast in the most recent Gubernatorial election), while its petitioning periods remain fixed, the cost of conducting a statewide petition drive has skyrocketed.  For the last two decades, any successful statewide petition drive has cost well over $100,000, and most cost hundreds of thousands of dollars.  Hall Decl. ¶¶ 5-17; Buchanan Decl. ¶¶ 12-13; Bilyeu Decl. ¶ 22-23; Benedict Decl. ¶ 19.  In 2010, a statewide petition drive cost more than $500,000.  Palmer Decl. ¶ 10.  By 2018, petitioning firms were charging up to $797,000, Harrison Decl. ¶ 6; Prior Decl. ¶ 8, and in 2022, they were charging between $882,000 and $1.375 million.  King Decl. ¶¶ 7-9.  In 2026, Collier obtained proposals from two petitioning firms: one firm (Landslide Political) quoted a price of $1,605,454.75 and the other (Free & Equal) quoted a

4

price of $3,280,320.00.  Collier Decl. ¶ 12 & Exs. A, B.   These costs are not just staggering, they are insurmountable for the non-wealthy, including Plaintiffs.  Collier Decl. ¶ 13; David Decl. ¶ 11; Taggart Decl. ¶¶ 6-8; Palmer Decl. ¶ 20; Bilyeu Decl. ¶ 35; Prior Decl. ¶¶ 7-9, 12; Verney Decl. ¶ 18; Buchanan Decl. ¶ 13; Kafoury Decl. ¶¶ 18-19.

Collier and his campaign are nonetheless actively engaged in the effort to collect the 81,030 signatures Texas requires by the June 25, 2026 deadline.  Collier Decl. ¶ 14.  Collier's team of approximately 20 volunteer petition circulators began circulating petitions on May 27, 2026, the first day permitted by law. Collier Decl. ¶ 14; David Decl. ¶ 3.  Collier has also retained Landslide Political at a cost of $30 per validated signature.  Collier Decl. ¶ 14.  Even so, Collier's effort has been drastically undermined by the apparent impossibility of his task: supporters are loathe to donate to fund a petition drive that will likely cost millions of dollars with no guarantee of success, and volunteer petitioners are similarly deterred.  Collier Decl. ¶ 13; David Decl. ¶ 11.  Collier is thus placed in an untenable position: he must complete an apparently impossible task, while its very impossibility chills his ability to do so.

## ARGUMENT

A party seeking a preliminary injunction must demonstrate "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs the injury to the nonmovant; and (4) the granting of the preliminary injunction will not disserve the public interest." *Casarez v. Val Verde Cnty.*, 957 F. Supp. 847, 852 (W.D. Tex. 1997).  Plaintiffs meet each element here.

## I.    Plaintiffs Are Likely to Succeed on the Merits

A. Texas's Ban on Petitioning Until After the Primary Election or Primary Runoff Violates the First Amendment.

5

Texas's prohibition against Plaintiffs petitioning until just 30 days before Texas's filing deadline violates the First Amendment. *See* §§ 142.006, 142.009. The circulation of a petition "involves both the expression of a desire for political change and a discussion of the merits of the proposed change." *Grant*, 486 U.S. at 421. That is no less true here than in *Grant*. Like the petition circulators in *Grant*, Collier and his supporters must engage with voters and convince them to support Collier's effort to qualify for the ballot. *See id*. at 421 and n.4. "Thus, the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Id.* at 421-22 (footnote omitted).

In *Grant*, the Court struck down a Colorado law that prohibited the payment of petition circulators who sought to qualify an initiative for the ballot. *See id.* at 422-23. The Court found the prohibition restricts political expression in two ways: first, it limits the number of speakers in support of a petition and the hours they can speak, thus limiting the size of the audience they can reach; and second, it makes it less likely the petitioners will succeed in qualifying for the ballot, thus limiting their ability to make the initiative a focus of statewide discussion. *See id.* at 422-23. The Court therefore concluded that Colorado's prohibition "trenches upon an area in which the importance of First Amendment protections is 'at its zenith,'" and that Colorado's burden to justify its law was "well-nigh insurmountable." *Id.* at 425.

Applying strict scrutiny, the Court disposed of Colorado's asserted justifications for its law, rejecting the assertion that the prohibition on paying petition circulators was necessary to ensure the initiative had sufficient support to justify placing it on the ballot and to protect the integrity of the initiative process. *See id.* 425-28. In so doing, the Court observed that "legislative restrictions on advocacy of the election or defeat of political candidates are wholly at odds with the guarantees of the First Amendment." *Id.* at 428 (quoting *Buckley v. Valeo*, 424 U.S. 1, 50 (1976)). The Court

6

found that principle equally applicable to "the discussion of political policy generally or advocacy of the passage or defeat of legislation" involved in the circulation of initiative petitions. *Id.* (quoting *Buckley*, 424 U.S. at 48).

Texas's ban on petitioning by Independent candidates until after the primary or primary runoff is more restrictive than Colorado's ban on paying petition circulators. Section 142.009 is an absolute prohibition on petition circulation outside a narrow statutory window—not merely a restriction on paying circulators. It thus restricts the "advocacy of the election or defeat of political candidates" and consequently is "wholly at odds with the guarantees of the First Amendment." *Id.* (quoting *Buckley*, 424 U.S. at 50). It also restricts core political speech in the same ways Colorado's law did: it limits the time circulators have to petition and the audience they can reach, and makes it less likely Independent candidates will qualify for the ballot, limiting their ability to make their candidacies the focus of statewide discussion. *See Grant*, 486 U.S. at 422-23.

Because § 142.009 directly restricts core political speech just as the Colorado law did, it is subject to the same "exacting scrutiny" the Court applied in *Grant*. *See Grant*, 486 U.S. at 420 (citing *Buckley*, 424 U.S. at 45). Section 142.009 must be "closely scrutinized and narrowly construed," *id.* at 423 (citation omitted), and Texas must "demonstrate that it is necessary to burden [Plaintiffs'] ability to communicate their message in order to meet its concerns." *Id.* at 426. Here, as in *Grant*, the burden Texas must overcome "is well-nigh insurmountable." *Id.* at 425.

Texas cannot carry that burden. As a preliminary matter, Texas is the only state in the nation that prohibits Independent candidates from petitioning until after its primary elections. Winger Decl. ¶ 22; Redpath Decl. ¶¶ 23-24. There is nothing unique about Texas that warrants such a restriction. Nor is the ban narrowly tailored: § 142.009 prohibits Plaintiffs from engaging in core political speech except within a small window (here 30 days for Collier and 113 days for

7

Independent candidates in races without a primary runoff) immediately before Collier must file his nomination petitions.

There is no state interest that could justify this restriction. For example, § 142.009 cannot be justified by an interest in preventing double-voting in the nominating process. For one, the provision is so broad it bars voters from signing Collier's nomination petition if they participated in the 2026 Republican or Democratic primary, even if they did not vote for any candidate for Lieutenant Governor (the office Collier seeks). *See* § 142.009. Plaintiff Bishop Murray is in precisely this position: he voted in the 2026 Democratic primary but did not cast a vote in the Lieutenant Governor race, yet he is barred from signing Collier's petition. Compl. ¶¶ 84-85. And the voter-Plaintiffs who did not wish to forego their right to vote in important primary races, including the critical race for United States Senate, are harmed because they cannot support Collier by signing his nomination petitions. Ashby Decl. ¶ 6; Seliger Decl. ¶ 5; Steelman Decl. ¶¶ 8-9; Rogers Decl. ¶ 5; Johnson Decl. ¶ 6.

In addition, Section 142.009 is constitutionally suspect because it is viewpoint discriminatory. Texas imposes no prohibition on the circulation of petitions by Primary Party candidates seeking to qualify for the primary election ballot. *See* § 172.001 *et seq*.[4] Primary Party candidates are thus free to circulate petitions for a period of up to ***two years*** prior to the election in which they seek to qualify. Only Independent candidates and Non-Primary Parties are subject to a ban on petitioning outside the short petitioning periods statutorily prescribed for them. *See* §§ 142.006, 142.009 (Independent candidates); 181.006 (Non-Primary Parties).[5] There is no

---

[4] "Primary Party" refers to a political party that nominates candidates for the general election ballot at primary elections. *See* §§ 172.001-173.087.

[5] "Non-Primary Party" refers to a political party that nominates candidates for the general election ballot at conventions. See §§ § 181.0311, 181.001-068.

legitimate justification for the Texas Election Code to choose winners (Primary Parties) and losers (all others) in this manner.

The Supreme Court has long recognized that "the First Amendment's hostility to content-based regulation extends not only to a restriction on a particular viewpoint, but also to a prohibition of public discussion of an entire topic." *Burson v. Freeman*, 504 U.S. 191, 197 (1992) (citations omitted). Section 142.009 runs afoul of this precedent. It imposes an outright prohibition on the core political speech of circulating nomination petitions, *see Grant*, 486 U.S. at 421-22, but only those involving Independent candidates and Non-Primary Parties. *See* §§ 142.006, 142.009, 181.006. "As a facially content-based restriction on political speech in a public forum," § 142.009 therefore "must be subjected to exacting scrutiny: The State must show that the regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Burson*, 504 U.S. at 198 (citations and quotation marks omitted).[6] Texas cannot do so here.

In sum, Section 142.009 does not further any legitimate constitutional interests Texas may have, such as protecting the right to vote or ensuring the integrity of elections. Instead, it imposes an outright ban on the core political speech of identifiable groups—and only those groups—without serving any compelling state interest. The ban applies year-round except for the narrow petitioning period prescribed by statute, and it is not narrowly tailored. Because § 142.009 cannot survive the strict scrutiny applicable under both *Grant* and *Burson*, there is a substantial likelihood Plaintiffs will prevail on their challenge to that provision.

---

[6] *Burson* is "the rare case in which [the Court] held that a law survives strict scrutiny." *Burson*, 504 U.S at 211. *Burson* involved a statute prohibiting solicitation of votes and distribution of campaign materials within 100 feet of a polling place. *Id.* at 193. The Court found that protecting voters' privacy at polling places served a compelling state interest and extensive evidence of voter bribery and intimidation demonstrated its necessity. *See id.* at 199-206.

B. Texas's Statutory Scheme Cannot Survive *Anderson/Burdick* Scrutiny and Therefore Violates Plaintiffs' First and Fourteenth Amendment Rights.

Defendants' enforcement of §§ 142.006, 142.007 and 142.009 in the 2026 election cycle cannot withstand scrutiny under the Supreme Court's *Anderson/Burdick* framework. *Anderson/Burdick* requires courts to weigh "the character and magnitude of the asserted injury" to Plaintiffs' First and Fourteenth Amendment rights against "the precise interests put forward by the State as justifications . . . ." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). The severity of the burden dictates the appropriate level of scrutiny. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Where, as here, the evidence establishes a severe burden, "the State must provide a compelling state interest and narrow tailoring of its rule." *Texas Indep. Party v. Kirk*, 84 F.3d 178, 184 (5th Cir. 1996). Defendants cannot do so because the evidence demonstrates §§ 142.006, 142.007 and 142.009 are unconstitutional under well-settled Supreme Court precedent.

1. Defendants' Enforcement of §§ 142.006, 142.007 and 142.009 Severely Burdens Plaintiffs' First and Fourteenth Amendment Rights.

The Supreme Court has never established a "litmus test for measuring the severity of a burden that a state law imposes," *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008), but it has recognized several standards that are sufficient to demonstrate a "severe" burden. For instance, the burden imposed by ballot access requirements is unquestionably severe if they "operate to freeze the political status quo." *Jenness v. Fortson*, 403 U.S. 431, 438 (1971). Relatedly, the Court has recognized that "past experience" can guide the analysis: a statutory scheme is severely burdensome if unaffiliated candidates "only rarely … succeed in getting on the ballot," whereas the reverse is true "if independent candidates have qualified with some regularity." *Storer v. Brown*, 415 U.S. 724, 742 (1974). Applying these standards, lower courts routinely strike down ballot access schemes when evidence shows candidates historically fail to qualify. *See, e.g., Graveline v. Benson*, 992 F.3d 524, 539 (6th Cir. 2021) (finding statutory scheme

10

severely burdensome where no candidate had complied in more than 30 years); *Lee v. Keith*, 463 F.3d 763, 769 (7th Cir. 2006) (finding statutory scheme severely burdensome where no candidate had complied in 25 years); *Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340 (N.D. Ga. 2016) (finding statutory scheme severely burdensome where no candidate had complied in more than 15 years), *aff'd*, 674 F. App'x 974 (11th Cir. 2017); *Nader v. Brewer*, 531 F.3d 1028, 1038 (9th Cir. 2008) (finding statutory scheme severely burdensome where no candidate had complied in 15 years); *Delaney v. Bartlett*, 370 F. Supp. 2d 373, 378 (M.D.N.C. 2004) (finding statutory scheme severely burdensome where only one candidate had complied in 20 years).

Here, the historical evidence confirms that §§ 142.006, 142.007 and 142.009 all but ensure that Independent candidates will be excluded from the ballot.  No Independent candidate for statewide office has qualified for the ballot in Texas since 2006—20 years ago—when only 45,450 signatures were required and candidates had the benefit of the full petitioning period.  Hall Decl. ¶ 15; Curtis Decl. ¶ 7; Rogers Decl. ¶ 10.  Further, no Independent candidate for statewide office has ***ever*** qualified when the petitioning period was cut short to 30 days due to a primary runoff, as it is for Collier in 2026.  At bottom, §§ 142.006, 142.007 and 142.009 unlawfully freeze the political status quo.  Accordingly, Texas's ballot access scheme operates in precisely the unconstitutional manner the Supreme Court warned against in *Anderson*: "[b]y limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity and competition in the marketplace of ideas" and undermine "the primary values protected by the First Amendment . . . ." *Anderson*, 460 U.S. at 794.

In addition, the evidence submitted herewith establishes that the only statewide petition drives that have succeeded in recent decades cost hundreds of thousands of dollars, and that at

11

current market rates the cost far exceeds $1 million.  Collier Decl. ¶ 12; Hall Decl. ¶¶ 5-15; Verney Decl. ¶¶ 13-15; Buchanan Decl. ¶¶ 9-13; Benedict Decl. ¶ 19; King Decl. ¶¶ 7-9, 13; Palmer Decl. ¶ 10; Bilyeu Decl. ¶ 23.  This, too, constitutes a severe burden on Plaintiffs' rights.  In a recent challenge to Texas's ballot access scheme, the Fifth Circuit expressly declined to decide whether the cost of conducting a petition drive in Texas constitutes a severe burden.  *See Miller v. Nelson*, 116 F.4th 373, 380-81 (5th Cir. 2024). It reasoned that this financial burden—even if severe—was not "*consequential*" because none of the plaintiffs in that case were actively engaged in a petition drive during the pendency of the litigation.  *Id.* at 381 (emphasis original).  *Miller's* reasoning is inapposite here.  Collier has been actively engaged in, and paying for, his petition drive for the entire duration of this case.  The burden that petition drive imposes, including its cost, is therefore consequential—it is impacting Plaintiffs right now—and Plaintiffs' evidence proving the severity of that burden is directly relevant and admissible.  *See* Fed. R. Evid. 401-02.  Indeed, lower courts routinely rely on evidence of the cost of complying with ballot access requirements to assess the severity of the burdens they impose.  As the Seventh Circuit explained in finding a statute severely burdensome that required petition circulators to be registered voters of the subdivision in which they petitioned:

> Even though the candidates in this case ultimately obtained ballot access, in the process their rights were substantially burdened. <u>The uncontested record indicates that their ballot access took a lot of time, money and people, which cannot be characterized as minimally burdensome.</u> In addition, the candidates contend that the statute installs other barriers: it inhibits their right to ballot access; it burdens their right to associate with a class of circulators; it limits their ability to choose the methods of political speech they consider most effective for their campaigns; and it reduces their ability to disseminate their message to a wider audience. . . . So the number of signatures the candidates were required to gather is not the only relevant consideration.

*Krislov v. Rednour*, 226 F.3d 851, 860 (7th Cir. 2000) (emphasis added).  The same reasoning applies here with greater force: Collier must gather a number of signatures so great, in so short a

12

time, that no candidate for statewide office in Texas has ever done it. And the evidence establishes that the money required precludes ballot access for candidates who cannot pay more than $1 million to finance the effort.

Other courts have recognized that the cost of complying with ballot access requirements "inherently burdens [the] electioneering activity" of the candidates and parties subject to them. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 364-65 (3d Cir. 2014) (citations omitted); *see Graveline v. Benson*, 430 F. Supp. 3d 297, 309, 311 (E.D. Mich. 2019) (relying on cost of complying with signature requirement to support finding of severe burden), *aff 'd*, 992 F.3d 524, 540 (6th Cir. 2021); *Green Party of Ga.*, 171 F. Supp. 3d at 1350-51, 1363 (same), *aff 'd*, 674 F. App'x 974 (11th Cir. 2017) (unpublished); *Constitution Party of Pa. v. Cortes*, 116 F. Supp. 3d 486, 502-06 (E.D. Pa. 2015) (same), *aff 'd*, 824 F.3d 386 (3d Cir. 2016). In *Graveline*, the candidate spent $38,000 on his petition drive, and the Court found that figure sufficient to support a finding of a severe burden. *See Graveline*, 430 F. Supp. 3d at 309, 311. In *Green Party of Ga.*, the Court found evidence showing a petition drive costing anywhere from $70,000 to $350,000 sufficient to support a finding of a severe burden. *See Green Party of Ga.*, 171 F. Supp. 3d at 1350-51. These costs, although substantial, pale in comparison to the costs Texas's statutory scheme imposes on Independent candidates for statewide office, including Collier.

The Supreme Court has squarely held that states may not condition participation in their electoral processes on financial status. *See Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 666 (1966) ("a State violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes the affluence of the voter or payment of any fee an electoral standard."). The Court has applied the same reasoning to candidates and political parties. *See Bullock v. Carter*, 405 U.S. 134, 143 (1972) (striking down "patently exclusionary" primary election candidate filing fees);

13

*Lubin v. Panish*, 415 U.S. 709 (1974) (striking down lesser filing fees in the absence of non-monetary alternatives). In *Bullock*, the Court expressly rejected the state's claim that filing fees were a reasonable means of limiting the ballot to "serious" candidates. *See Bullock*, 405 U.S. at 145-46. Filing fees are "extraordinarily ill-fitted" to serve that interest, the Court concluded, because the evidence showed that non-wealthy candidates "were *unable*, not simply *unwilling*," to pay them, and consequently it was uncontested that the fees "exclude legitimate as well as frivolous candidates." *Id.* at 146; *see also Lubin*, 415 U.S. at 717 ("Filing fees, however large, do not, in and of themselves, test the genuineness of a candidacy or the extent of the voter support of an aspirant for public office.").

Like the filing fees in *Bullock*, the cost of conducting a statewide petition drive in Texas is "patently exclusionary." *Bullock*, 405 U.S. at 143. And like the plaintiffs in *Bullock*, the evidence shows that Plaintiffs here are not simply unwilling but unable to pay that cost. Collier Decl. ¶¶ 9, 12-13. The evidence also shows that volunteer-led petition drives cannot succeed. Benedict Decl. ¶¶ 14-17; Buchanan Decl. ¶¶ 9-13; Kafoury Decl. ¶ 19; Verney Decl. ¶¶ 8-18; Collier Decl. ¶ 12; David Decl. ¶ 5. The cost of conducting a petition drive is therefore no less a barrier to Plaintiffs' participation in Texas's elections than the filing fees were to the plaintiffs in *Bullock* and *Lubin*. In *Miller*, this Court found the plaintiffs' reliance on *Harper* and *Bullock* "compelling," but concluded it was unavailing because none of them were actively engaged in a petition drive during the pendency of that case. *See Miller v. Hughs*, 634 F. Supp. 3d 340, 354-55 (W.D. Tex. 2022). "Plaintiffs make a good case that it is expensive, perhaps prohibitively expensive, to comply with the petition requirement," the Court reasoned, "but none of the Plaintiffs is suffering from that burden, even if it is a severe burden." *Id.* Here, by contrast, Collier and his co-Plaintiffs are suffering from that burden now, and the evidence establishes it is both severe and unconstitutional

14

under longstanding Supreme Court precedent. Collier Decl. ¶¶ 13-15; Ashby Decl. ¶ 5-6; Curtis Decl. ¶¶ 11, 13; David Decl. ¶ 10; Graham Decl. ¶¶ 5-8; Johnson Decl. ¶¶ 4-6; Rogers Decl. ¶¶ 4-5; Seliger Decl. ¶¶ 4-5; Steelman Decl. ¶ 9.

> 2. Enforcement of §§ 142.006 and 142.007 Against Plaintiffs Is Not Reasonably Tailored to Further Any State Interest.

The severe burdens Texas's statutory scheme imposes here cannot be justified by "generalized and hypothetical interests identified in other cases." *See Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 593 (6th Cir. 2006); *see also Anderson*, 460 U.S. at 793; *Libertarian Party of Ark. v. Thurston*, 962 F.3d 390, 403 (8th Cir. 2020); *Reform Party of Allegheny Cty. v. Allegheny Cty. Dep't of Elections*, 174 F.3d 305, 315 (3d Cir. 1999). Further, while states have legitimate interests in preventing voter confusion and limiting ballot access to candidates with demonstrated support, a ballot access regulation is not narrowly tailored when a state could serve the same interest through less restrictive means. *See Norman v. Reed*, 502 U.S. 279, 289 (1992); *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 204 (1999). Texas's regime fails this test.

"[T]he presence of eight candidacies cannot be said, in light of experience, to carry a significant danger of voter confusion." *Williams v. Rhodes*, 393 U.S. 23, 47 (1968) (Harlan, J., concurring in the result). Texas has never exceeded this benchmark, even prior to 1968, when Non-Primary Parties were not subject to any signature requirement: from 1903 to 1967, Texas never had more than six parties on the statewide ballot. Winger Decl. ¶ 18. That has remained the case since Texas adopted its Non-Primary Party signature requirement in 1968. Winger Decl. Ex. B at 45. Empirical evidence shows that, with two exceptions, no state with a signature requirement greater than 5,000 has ever had more than eight candidates on the ballot for statewide office. Winger Decl. ¶¶ 8-9. The 81,030-signature requirement is more restrictive, by several orders of magnitude, than necessary to prevent ballot overcrowding.

The state interest in limiting the ballot to candidates with demonstrated popular support does not justify enforcement of §§ 142.006, 142.007, and 142.009 against Collier, who has already demonstrated such support in three prior campaigns. Collier Decl. ¶ 6, 8, 9. Moreover, historical data confirms that Texas could significantly reduce its signature requirement and extend its petitioning window and *still* maintain a streamlined ballot. Defendants cannot constitutionally enforce these provisions where less restrictive means would serve the same legitimate ends. *Buckley*, 525 U.S. at 204.

## II.    The Remaining Preliminary Injunction Factors Weigh Heavily in Plaintiffs' Favor

### A.  Plaintiffs Will Suffer Irreparable Harm Absent The Requested Relief

The Fifth Circuit has repeatedly held that "the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (internal quotation marks and citation omitted). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citation omitted). Here, Plaintiffs' irreparable harm is severe and imminent. Absent relief, Collier will be excluded from Texas's 2026 general election ballot, which will cause irreparable harm to his and the voter-Plaintiffs' voting, speech, and associational rights. *See Williams*, 393 U.S. at 31. "Federal courts at all levels have recognized that violation of constitutional rights constitutes irreparable harm as a matter of law." *De Leon v. Perry*, 975 F. Supp. 2d 632, 663 (W.D. Tex. 2014), *aff'd sub nom. De Leon v. Abbott*, 791 F.3d 619 (5th Cir. 2015); *see also Voting for Am., Inc. v. Steen*, 732 F.3d 382, 390 (5th Cir. 2013) (recognizing that "[p]etitions by themselves are protected speech").

### B.  The Equities Favor Plaintiffs

16

Defendants cannot credibly articulate any harm if they are enjoined from enforcing §§ 142.006 and 142.007 against Plaintiffs. Texas's interest in limiting ballot access to candidates with demonstrated support is not served by excluding a candidate who has received over nine million votes in recent statewide elections. Collier Decl. ¶¶ 6, 8-9. By contrast, Plaintiffs will be deprived of their "most precious [First Amendment] freedoms." *Williams*, 393 U.S. at 30. The balance of equities tips decisively in Plaintiffs' favor. *See Opulent Life Church*, 697 F.3d at 297.

C.  Plaintiffs' Requested Relief is in the Public Interest

The requested injunction will serve the public interest by protecting the right of all Texans to cast their votes effectively. "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter*., 732 F.3d at 539 (internal quotation marks and citation omitted); *see also De Leon*, 975 F. Supp. 2d at 665. By contrast, "enforcement of an unconstitutional law is always contrary to the public interest." *Fund Texas Choice v. Paxton*, 658 F. Supp. 3d 377, 415 (W.D. Tex. 2023) (internal quotation marks and citation omitted). The public interest is further served because the relief sought imposes no meaningful burden on the administration of Texas's elections. Enjoining §§ 142.006 and 142.007 will not alter voting procedures or disrupt important election deadlines.

**RELIEF REQUESTED**

This Court has broad equitable powers to fashion appropriate relief to remedy a constitutional violation. *See Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937) ("Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.") Courts have not hesitated to exercise that power in the electoral context. When Eugene McCarthy challenged Texas's electoral scheme because it failed to provide a procedure for an Independent candidate for President to qualify for the ballot, the Supreme Court ordered Texas to

17

remedy the constitutional violation by placing McCarthy on the ballot. *See McCarthy v. Briscoe*, 429 U.S. 1317 (1976) (Powell, J., in chambers). Justice Powell (with unanimous consent of his colleagues) took judicial notice of Senator McCarthy's national stature and concluded the facts demonstrated he had "the requisite community support." Other courts have granted the same relief. *See Goldman-Frankie v. Austin*, 727 F.2d 603, 606-07 (6th Cir. 1984) (collecting cases). And in *Goldman-Frankie*, the Sixth Circuit granted such relief to an independent candidate for local office to remedy Michigan's ongoing failure to provide Independent candidates a procedure for qualifying. *See Goldman-Frankie*, 727 F.2d at 607-08.

Courts have also exercised their equitable powers by lowering signature requirements and extending filing deadlines. *See*, *e.g.*, *Graveline v. Johnson*, 336 F. Supp. 3d 801, 817 (E.D. Mich. 2018) (extending Michigan's filing deadline and lowering its 30,000-signature requirement for Independent candidates for statewide office from 30,000 to 5,000); *Green Party of Ga.*, 171 F. Supp. 3d at 1374 (enjoining Georgia's 1 percent signature requirement, which equaled 50,334 signatures in 2012, and lowering it to 7,500 signatures); *Constitution Party of Pa. v. Aichele*, No. 12-2726, ECF No. 115 (E.D. Pa. Feb. 1, 2018) (lowering Pennsylvania's 2 percent signature requirement to 5,000 signatures for Governor and 2,500 signatures for Lieutenant Governor) (attached as Hall Decl. Ex. 29).

Here, Collier has repeatedly qualified for Texas's ballot and has in previous elections received more than 9 million votes. Collier is a serious candidate who has demonstrated "the requisite community support" and he should be placed on the ballot. Plaintiffs therefore request that the Court issue a preliminary injunction directing Defendants to place Collier on the November 3, 2026 general election ballot for the office of Lieutenant Governor.

In the alternative, Plaintiffs request that the Court preliminarily enjoin Defendants from enforcing § 142.006 and § 142.007 as applied to Collier in the 2026 election cycle and direct Defendants to:

A. Extend the filing deadline codified in § 142.006 by 83 days, such that Collier's petitioning period extends for 113 days, or until September 16, 2026; and

B. Lower the signature requirement codified in § 142.007 to 5,000 signatures, which the evidence demonstrates is sufficient to protect Texas's interests, or to another number this Court deems appropriate.

## **CONCLUSION**

Texas's Election Code provisions discussed herein violate Plaintiffs' rights under the First and Fourteenth Amendments. Without intervention from this Court, Plaintiffs will suffer irreparable harm and a candidate who has received *millions* of votes from Texas voters and who has a real chance at *winning* election as Lieutenant Governor will be kept off the ballot. That would be a manifest injustice and cannot stand.  For the foregoing reasons, Plaintiffs respectfully request that this Court enter a preliminary injunction.

Dated: June 25, 2026

Respectfully submitted,

 s/ David P. Whittlesey

Oliver Hall
*Pro hac vice* motion pending
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC, 20009
Email: oliverhall@competitivedemocracy.org
Tel: +1 (202) 248-9294

David P. Whittlesey
State Bar No. 00791920
**ALLEN OVERY SHEARMAN
STERLING US LLP**
300 West 6th Street, Suite 2250
Austin, TX 78701
Email: david.whittlesey@aoshearman.com
Tel: +1 (512) 647-1900

Michael P. Mitchell
Christopher Ryan
Anna Stockamore
*Pro hac vice* motions pending
**ALLEN OVERY SHEARMAN
STERLING US LLP**
1101 New York Avenue, NW
Washington, D.C. 20005
Email: michael.mitchell@aoshearman.com
        christopher.ryan@aoshearman.com
        anna.stockamore@aoshearman.com
Tel: +1 (202) 683-3800
Fax: +1 (202) 683-3999

***Attorneys for Plaintiffs***

20

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2026, this document was filed electronically via the court's CM/ECF system, causing electronic service upon all counsel of record.

s/ David P. Whittlesey
David P. Whittlesey

**CERTIFICATE OF CONFERRAL**

As required by Local Rule CV-7(i), I hereby certify that on June 25, 2026, I conferred by telephone with Zachary Berg, Steven Loomis and Jacob Dustin, counsel for Defendants, in a good-faith attempt to resolve by agreement the matters referenced in this motion. After discussing the motion and requested relief, counsel for Defendants confirmed that Defendants do not consent to the relief requested.

s/ Oliver B. Hall
Oliver B. Hall
