# UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| MICHAEL EDWARD COLLIER, EDWARD E. GRAHAM, BISHOP KENNETH R. MURRAY, BRANDON J. DAVID, CHRISTOPHER M. HARTE, HARRY STEPHEN BARTLETT, LINDA CURTIS, B. GLEN WHITLEY, GLENN MOSS ROGERS, CHRISTOPHER C. ASHBY, SCOTT RICHARD MILDER, KELTON GRAY SELIGER, CHARLES FOSTER JOHNSON, ALAN STEELMAN and SARAH STOGNER, <br><br> *Plaintiffs*, <br><br> v. <br><br> JANE NELSON, in her official capacity as the Secretary of State of the State of Texas, and DAVE NELSON, in his official capacity as the Deputy Secretary of State of the State of Texas, <br><br> *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil No. 1:26-cv-01574-RP ) ) ) ) ) ) ) ) |

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

David P. Whittlesey
State Bar No. 00791920
ALLEN OVERY SHEARMAN STERLING US LLP
300 West 6th Street, Suite 2250
Austin, TX 78701
Email: david.whittlesey@aoshearman.com
Tel: +1 (512) 647-1900

Michael P. Mitchell (*Pro hac vice*)
Christopher Ryan (*Pro hac vice*)
Anna Stockamore (*Pro hac vice*)
ALLEN OVERY SHEARMAN STERLING US LLP
1101 New York Avenue, NW
Washington, D.C. 20005
Email: michael.mitchell@aoshearman.com
        christopher.ryan@aoshearman.com
        anna.stockamore@aoshearman.com
Tel: +1 (202) 683-3800
Fax: +1 (202) 683-3999

Oliver Hall
*Pro hac vice*
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC, 20009
Email: oliverhall@competitivedemocracy.org
Tel: +1 (202) 248-9294

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

    I.    Plaintiffs Are Likely to Succeed on the Merits ................................................... 3

        A.    Section 142.009 Violates the First Amendment. ............................................ 3

        B.    Texas's Statutory Scheme Fails Under *Anderson/Burdick* and Therefore Violates Plaintiffs' First and Fourteenth Amendment Rights. ............................................ 4

    II.    The Remaining Preliminary Injunction Factors Weigh in Plaintiffs' Favor. ...................... 9

        A.    Irreparable Harm: Collier's absence on the ballot is the injury, not a defense .............. 9

        B.    Texas has no legitimate interest in enforcing unconstitutional ballot access laws. ...... 10

CONCLUSION ....................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Celebrezze*,
460 U.S. 780 (1983)......................................................................................................10

*Buckley v. Valeo*,
424 U.S. 1 (1976).....................................................................................................1, 3, 4

*Bullock v. Carter*,
405 U.S. 134 (1972)....................................................................................................6, 8

*Burson v. Freeman*,
504 U.S. 191 (1992).........................................................................................................5

*Const. Party of Pa. v. Aichele*,
757 F.3d 347 (3d Cir. 2014).............................................................................................7

*Fund Texas Choice v. Paxton*,
658 F. Supp. 3d 377 (W.D. Tex. 2023)...........................................................................11

*Graveline v. Benson*,
430 F. Supp. 3d 297 (E.D. Mich. 2019), *aff'd*, 992 F.3d 524 (6th Cir. 2021)...........................8

*Harper v. Va. State Bd. of Elections*,
383 U.S. 663 (1966)..........................................................................................................6

*Lubin v. Panish*,
415 U.S. 709 (1974)..........................................................................................................6

*Meyer v. Grant*,
486 U.S. 414 (1988)..................................................................................................2, 3, 4

*Miller v. Nelson*,
116 F.4th 373 (5th Cir. 2024) .......................................................................................6, 7

*Storer v. Brown*,
415 U.S. 724 (1974)...................................................................................................2, 9, 10

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
732 F.3d 535 (5th Cir. 2013) ........................................................................................10

*Voting for Am., Inc. v. Steen*,
732 F.3d 382 (5th Cir. 2013) ....................................................................................1, 3, 4

**Statutes**

Tex. Elec. Code § 142.006........................................................................................................8

Tex. Elec. Code § 142.007........................................................................................................8

Tex. Elec. Code § 142.009........................................................................................................8

Tex. Elec. Code § 172.001........................................................................................................5

Tex. Elec. Code § 192.032........................................................................................................9

Plaintiffs respectfully submit this Reply Memorandum in Further Support of their Motion for Preliminary Injunction, dated June 25, 2026 (ECF. No. 10) (the "Motion" or "Mot.") and in response to the Response in Opposition, dated July 16, 2025, filed by Defendants Jane Nelson, Secretary of State of Texas, and Dave Nelson, Deputy Secretary of State of Texas (together, "Defendants") (ECF No. 22) (the "Opposition" or "Opp.").

### **INTRODUCTION**

Plaintiffs have demonstrated that TEX. ELEC. CODE §§ 142.006, 142.007 and 142.009 violate their First and Fourteenth Amendment rights by (a) infringing core political speech by effectively prohibiting petition circulation until after the primary election or primary runoff, and (b) imposing severe and unjustified burdens on Independent candidates through a combination of an excessive signature requirement, unduly short petitioning period, and an arbitrary restriction on which voters may sign petitions.[1] (Mot. 5-15.)  In response, Defendants contend—in contradiction to the Fifth Circuit case on which they rely—that petition circulation is not core political speech, and that the burdens imposed by these provisions are reasonable and justified by Texas's regulatory interests.  (Opp. 15-19.)  Defendants are wrong.

First, petition circulation—including petitioning to qualify a candidate for the ballot—is core political speech.  As Defendants' own authority expressly recognizes, "*[t]he petition itself is the protected speech.*"  *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 390 (5th Cir. 2013) (emphasis original).  Defendants' assertion that nominating petitions are subject to lesser protection than initiative petitions is incorrect and inconsistent with Supreme Court precedent.  *See Buckley v. Valeo*, 424 U.S. 1, 50 (1976) ("legislative restrictions on advocacy of the election or defeat of political candidates are wholly at odds with the guarantees of the First Amendment").

---

[1] Hereinafter all statutory citations are to the Texas Election Code unless otherwise indicated.

Second, Defendants argue that § 142.009—which invalidates any petition signature signed on or before the primary election or runoff primary if there is one—is not a prohibition on pre-primary petitioning because it does not expressly ban that activity. (Opp. 16-17.) This specious argument ignores the obvious: the sole point of circulating nomination petitions is to qualify a candidate for the ballot. By invalidating petition signatures, and the speech those petitions contain, § 142.009 violates the First Amendment as clearly as if it expressly prohibited petition circulation.

Third, Defendants effectively concede that Texas has created a situation in which it costs millions of dollars to gain access to the ballot, but then cavalierly dismiss this burden because "political campaigns are expensive." (Opp. 13.) As an initial matter, Plaintiffs do not challenge the cost of running a campaign, which a candidate may choose to undertake or avoid, but the required cost an Independent candidate must incur to be placed on the ballot. What is more, it is undisputed that no Independent candidate for statewide office (including President) has *ever* qualified for the ballot in Texas when the petitioning period was cut to just 30 days, as it was for Plaintiff Collier. That fact alone—not to mention the comprehensive evidentiary record Plaintiffs submitted, which Defendants simply disregard—places the constitutionality of Texas's statutory scheme in grave doubt. *See Storer v. Brown*, 415 U.S. 724, 742 (1974) (ballot access requirements are constitutionally suspect if it is "only rarely that the unaffiliated candidate will succeed in getting on the ballot"). Defendants ironically invoke the "esteemed process of democratic participation" to justify the provisions challenged here, but the record establishes that Texas's statutory scheme systematically excludes Independent candidates like Collier, thereby disenfranchising millions of voters who wish to vote for them. Such a statutory scheme is not only profoundly undemocratic—it is unconstitutional. Accordingly, Plaintiffs respectfully request that the Court enter an injunction granting the relief requested in the Motion.

2

## ARGUMENT

**I.    Plaintiffs Are Likely to Succeed on the Merits**

A. Section 142.009 Violates the First Amendment.

Defendants make no attempt to defend against Plaintiffs' Count I claim that § 142.009 is unconstitutional under the "exacting scrutiny" applicable to restrictions on the circulation of a petition seeking political change. *Meyer v. Grant*, 486 U.S. 414, 420-21, 425-26. Instead, Defendants attempt to distinguish *Grant* on several grounds. (Opp. 15-17.) These efforts are unavailing. Defendants' own authority confirms that Plaintiffs' circulation of Collier's nominating petitions is "core political speech" for which First Amendment protection "is at its zenith." *Grant*, 486 U.S. at 425.

Defendants note that *Grant* involved restrictions on initiative petitions, not candidate petitions, to suggest that *Grant*'s "'fact-specific' analysis" is inapposite here. (Opp. 15 (citing *Steen*, 732 F.3d at 395-96).) But as *Grant* itself recognizes, "legislative restrictions on advocacy of the election or defeat of political candidates are wholly at odds with the guarantees of the First Amendment." *Grant*, 486 U.S. at 428 (quoting *Buckley*, 424 U.S. at 50). Therefore, "[a]dvocacy of the election or defeat of candidates for federal office is no less entitled to protection under the First Amendment than the discussion of political policy generally or advocacy of the passage or defeat of legislation." *Buckley*, 424 U.S. at 48; *Grant*, 486 U.S. at 428.

*Steen* likewise supports Plaintiffs position. There, the Fifth Circuit distinguished voter registration application processing from petition circulation because "the very nature of a petition process requires association between the third-party circulator and the individuals agreeing to sign" and observed that "*the circulation and submission*" of a petition is "intertwined with the underlying [petition's political message]," and thus, "*[t]he petition itself is the protected speech*." *Steen*, 732 F.3d at 390 (emphasis in original).

3

Defendants' insistence that § 142.009 contains no express "prohibition" on petitioning activity does not alleviate the violation. (Opp. 17.) Signatures on a petition—which "*itself is the protected speech*"—are invalid if collected outside the 30-day window, which means the protected speech itself is prohibited outside that window. *Steen*, 732 F.3d at 391 (emphasis original). It is therefore immaterial that Plaintiffs "remain free to conduct campaign activities and discuss their candidacy with voters outside of the signature validity period." (Opp. 10.) "That [Plaintiffs] remain free to employ other means to disseminate their ideas does not take their speech through petition circulators outside the bounds of First Amendment protection." *Grant*, 486 U.S. at 424.

Defendants also assert in passing that "[n]o speech is limited, and no viewpoint is censored" by Texas's prohibition against Independent (and Non-Primary Party) candidates' petitioning outside the statutorily-prescribed period. (Opp. 10.) Not true. Texas imposes no limitation on the circulation of petitions by Primary Party candidates, and thus they may engage in this core political speech for up to **_two years_** before the election in which they seek to qualify. *See* § 172.001 *et seq*. Defendants provide no justification for this differential treatment, much less a compelling reason. A statutory scheme that requires an Independent candidate like Collier to submit 81,030 signatures to qualify for the ballot, while prohibiting him from engaging in the First Amendment protected conduct necessary to do so except during a 30-day window, is manifestly unreasonable and discriminatory, and it is unconstitutional under *Grant*.

     B.  Texas's Statutory Scheme Fails Under *Anderson/Burdick* and Therefore Violates Plaintiffs' First and Fourteenth Amendment Rights.

       1.  Defendants' reliance on *Miller* ignores the record in this case.

Plaintiffs' evidentiary record shows that Independent candidates and Non-Primary Parties rarely qualify for Texas's ballot, that volunteer efforts cannot succeed and historically have not

4

succeeded, and that the cost of a successful statewide petition drive in Texas now easily exceeds $1 million—if it can be accomplished at all.

This evidence raises grave constitutional concerns. It demonstrates that Texas has erected a "patently exclusionary" statutory scheme that makes the financial status of Independent candidates and Non-Primary Parties determinative of whether they may qualify for the ballot. *Bullock v. Carter*, 405 U.S. 134, 143 (1972); *see also Lubin v. Panish*, 415 U.S. 709 (1974); *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 666 (1966). Affluent candidates or parties that can afford to pay the exorbitant cost of a statewide petition drive may qualify, but those who cannot afford such costs will not qualify. That is not a "subjective determination," as Defendants derisively suggest (Opp. 4), it is what the evidence in the record conclusively establishes based on the historical experience of every statewide Independent candidate and Non-Primary Party in the past several decades. That evidence is sufficient to establish a "severe" burden under the *Anderson-Burdick* framework. (*See* Mot. 11 (citing cases).)

Defendants attempt to avoid this issue altogether by asserting that "political campaigns are expensive," and noting the sums spent by candidates for Lieutenant Governor in 2022. (Opp. 13 & n.11.) But Plaintiffs do not challenge the costs of funding a political campaign for statewide office. Rather, Plaintiffs challenge Texas's statutory scheme because it prevents Independent candidates from qualifying for the ballot at all—thus becoming candidates—unless they spend inordinate sums to comply with the challenged provisions. That is what makes Texas's statutory scheme unconstitutional under *Bullock*, *Lubin*, and *Harper*.

Defendants do not address Plaintiffs' claim that the financial burden imposed by Texas's statutory scheme is unconstitutional under this line of precedent. Instead, the Opposition asserts that the burden is not "sufficient to overcome Texas' interest in ensuring meaningful community

5

support." (Opp. 14 (citing *Miller v. Nelson*, 116 F.4th 373, 381 (5th Cir. 2024)).)  As Defendants note, the Court in *Miller* concluded that the cost of conducting a statewide petition drive did not establish "a *consequential* burden" in that case.  *Miller*, 116 F.4th at 381 (emphasis original).  But Defendants conspicuously fail to address the Court's rationale for that conclusion.  The cost of conducting a statewide petition drive was not consequential in *Miller*, the Court found, because none of the plaintiffs were conducting a petition drive or paying for it during the pendency of the litigation.  *See id.*  The Court thus concluded the plaintiffs "fail[ed] to establish that they have been impacted by the alleged burden, even if we were to hold that the burden is severe."  *Id.*  That is not true here.  Collier was actively engaged in, and paying for, a petition drive when the Complaint in this case was filed, and while the instant Motion was being briefed.  (ECF. No. 10-31 (Collier Decl.) ¶¶ 14-17.)  The cost of conducting that petition drive is plainly consequential to Collier. The two petition firms that he sought to retain quoted prices of more than $1.6 million and $3.2 million, respectively, and he actually retained one of those firms at a cost of $30 per signature. Collier Decl. ¶¶ 12, 14.  Collier is therefore impacted by the financial burden imposed by the challenged provisions, and that burden must be considered in the constitutional analysis here.

Additionally, Collier has presented evidence demonstrating that the historical impossibility of complying with the challenged provisions—no Independent candidate for statewide office has ever done so when the petitioning period was cut short to just 30 days—itself constitutes a heavy burden, because he cannot raise money to fund an exercise that donors correctly perceive to be practically impossible.  Collier Decl. ¶ 13; *see Const. Party of Pa. v. Aichele*, 757 F.3d 347, 364-65 (3d Cir. 2014) (citations omitted) (recognizing that the cost of complying with ballot access requirements "inherently burdens [the] electioneering activity" of the candidates and parties subject to them).  No matter, Defendants contend, because "running for office is fraught with

6

difficulties. . . ." (Opp. 14.) But this is an evasion. Plaintiffs do not challenge the difficulty, or the cost, of "running for office," but rather the barriers Texas has erected that *prevent* Collier from running for office—along with every other similarly situated Independent in the history of Texas's elections. Indeed, Plaintiffs have submitted evidence demonstrating that Collier has raised and spent millions of dollars to fund his previous candidacies, and that he is prepared to raise millions more to fund his present candidacy. Collier Decl. ¶¶ 5, 8, 9, 13. The problem is not the difficulty of "running for office" in Texas. It is that Texas makes it practically impossible for an Independent to do so—even an Independent like Collier, who has received more than 9 million votes in previous elections, and who has a credible chance of *winning* election in 2026 but for Texas's historically insurmountable barriers to ballot access. Collier Decl. ¶¶ 6, 8, 9, 18-20.

### 2.   The challenged provisions must be evaluated together.

Defendants note there is "no provision in the law" that would allow Collier to appear on the ballot as an Independent candidate "without obtaining a sufficient number of signatures." (Opp. 9-10.) Here, their effort to defend the challenged provisions in isolation mischaracterizes and minimizes the burdens imposed by Texas's statutory scheme. Texas does not just require Collier to demonstrate support from voters equal in number to 1 percent of the total vote for Governor, or to gather 81,030 signatures, *see* § 142.007, but Texas also prohibits Collier from attempting to comply with that requirement outside the 30-day window prescribed by statute. *See* §§ 142.006, 142.009. Defendants' rote recitation of cases that upheld signature requirements higher than 1 percent is therefore unavailing. (Opp. 9-10.) None of those cases involved the extreme time constraints that Texas imposes on Plaintiffs here, and none presented evidence of the exorbitant and "patently exclusionary" sums that must be spent to comply with such a scheme. *Bullock*, 405 U.S. at 143. By contrast, Michigan's 30,000-signature requirement for Independent candidates for statewide office—which was slightly less than 1 percent of the prior vote for

Governor—was struck down precisely because, like Texas's requirement, it had historically operated to exclude Independent candidates and imposed substantial costs on them. *See Graveline v. Benson*, 430 F. Supp. 3d 297, 309-11 (E.D. Mich. 2019) (relying on historical exclusion of Independent candidates and cost of complying with signature requirement to support finding of severe burden), *aff'd*, 992 F.3d 524, 539-41 (6th Cir. 2021) (same).

3.  <u>Robert F. Kennedy Jr.'s 2024 petition drive confirms, rather than refutes, Plaintiff's evidence.</u>

According to Defendants, Kennedy's successful petition drive as an Independent candidate for President in 2024 "is fatal to Plaintiffs' claim of impossibility." (Opp. 9.) Not so. Kennedy had 69 days to collect signatures, while Plaintiffs had 30 days. *See* §§ 192.032(c) (Independent presidential candidate's petition must be filed by the second Monday in May of the election year, or May 13, 2024); 192.032(g) (signatures must be collected after the date of the presidential primary election, or March 5, 2024). Plaintiffs thus needed 2,701 signatures per day, whereas Kennedy only needed approximately 1,640 signatures per day. Kennedy also qualified only after ***<u>his campaign spent millions of dollars on his petition drive.</u>*** *See* Declaration of Andy Griffith, filed July 23, 2026, (Griffith Decl.) ¶¶ 12-16. Furthermore, the Texas petition drive was so difficult—even for a well-funded campaign like Kennedy's—that the campaign's nationwide field budget was cut to practically zero in March 2024, because all funds and resources were redirected to that effort. Griffith Decl. ¶¶ 11, 16. That a single Independent candidate had success in the last two decades confirms, rather than refutes, Plaintiff's case, that Texas's scheme allows access to the wealthy, but only rarely, and bars everyone else. *See Storer*, 415 U.S. at 742.

4.  <u>Defendants' arithmetic understates the actual burden of the primary screenout.</u>

Defendants' effort to minimize the "primary screenout" by counting all non-primary voters as theoretically "eligible" also misses the point. (Opp. 12-13.) The constitutional burden is not

measured by the abstract number of registered voters who did not participate in a major party primary. It is measured by whether a "reasonably diligent" candidate can identify eligible signers and obtain 81,030 valid signatures in 30 days. *See Storer*, 415 U.S. at 742. Plaintiffs' evidence shows that the "primary screenout" reduces the pool of eligible signers, increases the rate of invalid signatures, and makes petitioning on primary election day—"by far the most productive day of a petition drive"—impossible. (Mot. 4 (citing evidence).) Indeed, Collier submitted more than 5,000 signatures to the Secretary of State, yet more than half were invalidated—and Defendants refuse to disclose which signatures were rejected or why. Second Declaration of Michael Edward Collier, filed July 23, 2026, ¶¶ 3-9. That real-world burden is not cured by Defendants' assumption that millions of less politically engaged registered voters remain theoretically available.

## II.     The Remaining Preliminary Injunction Factors Weigh in Plaintiffs' Favor.

A. Irreparable Harm: Collier's absence on the ballot is the injury, not a defense

Texas has excluded Collier from the ballot by imposing practically impossible burdens on his ability to qualify. In so doing, Texas has violated not only Collier's fundamental First Amendment rights to speak, petition and associate for political purposes, but also those of his co-Plaintiffs, each of whom desires to campaign and vote for him. *See Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983). In Defendants' view, however, Plaintiffs cannot show irreparable harm because the deadline for Collier to file his nomination petitions "has already passed" and "Collier is not on the ballot currently." (Opp. 15.) But that is precisely why Plaintiffs are suffering irreparable harm and will continue to do so in the absence of injunctive relief.

If Defendants are correct, no Plaintiff could ever demonstrate irreparable harm, no matter the constitutional violation, if the deadline for complying with an unconstitutional statute had passed. But Defendants are not correct. It is well-settled that "the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a

9

preliminary injunction." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 n.7 (5th Cir. 2013) (internal quotation marks and citation omitted). The passage of Texas's filing deadline in no way alters that conclusion.

      B. Texas has no legitimate interest in enforcing unconstitutional ballot access laws.

Texas has no legitimate interest in enforcing a ballot access scheme that unconstitutionally excludes Plaintiffs. Defendants' asserted concerns about "ballot overcrowding," "voter confusion," and "frivolous or fraudulent candidacies," (Opp. 17-18), are not implicated by a candidate who has received more than 9 million votes in recent elections and has a genuine chance to win in 2026. Further, Texas has never experienced "ballot overcrowding and voter confusion," Hall Decl. ¶¶ 2-4; Winger Decl. ¶¶ 8-9, 18, nor will it if Collier is permitted to run in 2026.

Finally, Defendants' assertion that "the government's and the public's interest merge when the government is a party," (Opp. 17 (citation omitted)), does not resolve the public interest inquiry. Where, as here, the challenged provisions are unconstitutional as applied, the State has no cognizable interest in enforcement. "Enforcement of an unconstitutional law is always contrary to the public interest." *Fund Texas Choice v. Paxton*, 658 F. Supp. 3d 377, 415 (W.D. Tex. 2023) (internal quotation marks and citation omitted).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Injunction and enter an Order granting the relief requested in the Motion.

Dated: July 23, 2026

Respectfully submitted,

s/ Oliver B. Hall

Oliver Hall
*Pro hac vice*
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC, 20009
Email: oliverhall@competitivedemocracy.org
Tel: +1 (202) 248-9294

David P. Whittlesey
State Bar No. 00791920
**ALLEN OVERY SHEARMAN
STERLING US LLP**
300 West 6th Street, Suite 2250
Austin, TX 78701
Email: david.whittlesey@aoshearman.com
Tel: +1 (512) 647-1900

Michael P. Mitchell
Christopher Ryan
Anna Stockamore
*Pro hac vice*
**ALLEN OVERY SHEARMAN
STERLING US LLP**
1101 New York Avenue, NW
Washington, D.C. 20005
Email: michael.mitchell@aoshearman.com
            christopher.ryan@aoshearman.com
            anna.stockamore@aoshearman.com
Tel: +1 (202) 683-3800
Fax: +1 (202) 683-3999

***Attorneys for Plaintiffs***

11

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 23, 2026, this document was filed electronically via the court's CM/ECF system, causing electronic service upon all counsel of record.

 s/ Oliver B. Hall      
Oliver B. Hall
