IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL EDWARD COLLIER, et al., | § § § § | |
| Plaintiff, | § | |
| v. | § § | 1:26-CV-1574-RP |
| JANE NELSON, *in her official capacity as the Secretary of State of the State of Texas*, et al., | § § § § | |
| Defendants. | § § | |

## <u>ORDER</u>

Before the Court is a Motion for Preliminary Injunction filed by Plaintiffs Michael Edward Collier ("Collier"), Christopher C. Ashby, Harry Stephen Bartlett, Linda Curtis, Brandon J. David, Edward E. Graham, Christopher M. Harte, Charles Foster Johnson, Scott Richard Milder, Kenneth R. Murray, Glenn Moss Rogers, Kelton Gray Seliger, Alan Steelman, Sarah Stogner, and B. Glen Whitley (together, "Plaintiffs"). (Dkt. 10). Defendants Jane Nelson, in her official capacity as Secretary of State of the State of Texas, and Dave Nelson, in his official capacity as Deputy Secretary of State of the State of Texas (together, "Defendants") filed a Response. (Dkt. 22). Plaintiffs filed a Reply. (Dkt. 23). On July 28, 2026, the Court held a hearing on the Motion for Preliminary Injunction. (Dkt. 25). Having considered the briefing, the arguments made at the hearing, the evidence, and the relevant law, the Court will deny the motion.

## I. BACKGROUND

This dispute centers on the petition requirements that independent candidates for statewide office in Texas must meet to be listed on the ballot. The requirements at issue here come primarily from the interaction of three provisions of the Texas Election Code. Section 142.006 sets a deadline for an independent candidate to file an application for a place on the ballot: "not later than 5 p.m. of the 30th day after runoff primary election day." Tex. Elec. Code § 142.006. Section 142.007 sets a

1

requirement for the number of petition signatures an independent candidate must collect: "for a statewide office, one percent of the total vote received by all candidates for governor in the most recent gubernatorial general election." Tex. Elec. Code § 142.007. And § 142.009 limits who can validly sign a petition, and when—making a petition invalid if: (1) it was signed before the primary election day or runoff primary election day, when a runoff occurs, or (2) the signer voted in a primary election (general or runoff) of a party who made a nomination for the office sought by the independent candidate. Tex. Elec. Code § 142.009.

Collier, a former Democratic Party nominee for Lieutenant Governor in 2018 and 2022, is attempting to run as an independent candidate for Lieutenant Governor in the 2026 general election. (Compl., Dkt. 1, at 1). Because of the provisions listed above—and because there was a runoff primary election for Lieutenant Governor—to be on the ballot, Collier was required to submit a nomination petition with 81,030 valid signatures, from voters who did not vote in a primary election, collected within thirty days. (*Id.* at 1–2). Plaintiffs allege that no independent candidate for statewide office has ever met this set of requirements. (*Id.* at 2). Even with a longer petitioning period—absent the primary election runoff this year, Collier would have had 113 days to gather signatures—the last year in which a statewide independent candidate qualified was 2006, when 45,540 signatures were required. (Mot. Prelim. Inj., Dkt. 10, at 7).

Plaintiffs also allege that because of the restrictions imposed by Texas, petition drives for statewide or national office are extremely expensive. Plaintiffs submitted evidence that the two proposals Collier received from petitioning firms quoted roughly $1.6 million and $3.3 million to conduct his petition drive—and those quotes were not accounting for the additional challenges of a shortened, thirty-day campaign. (Compl., Dkt. 1, at 21–22). Collier also introduced evidence that the campaign of Robert F. Kennedy, Jr., who successfully completed an independent-candidate petition

drive over sixty-nine days in the 2024 U.S. presidential election, had to divert nearly all of its national field-office resources to the Texas petitioning effort. (Reply, Dkt. 23, at 12).

Here, Collier did attempt a petition drive and was actively in the process of collecting signatures when Plaintiffs filed both this lawsuit and their Motion for Preliminary Injunction. (Compl., Dkt. 1, at 25; Mot. Prelim. Inj., Dkt. 10, at 11). He worked with a petitioning firm at a cost of $30 per signature. (*Id.*). In total, before the deadline, he collected 1,768 valid signatures.[1] (Resp., Dkt. 22, at 8).

Faced with these hurdles to running in the general election, Collier, along with a group of Texas voters who wish to vote for him as an independent candidate for Lieutenant Governor, brought this suit. (Compl., Dkt. 1, at 4). They allege that Texas's requirements unconstitutionally restrict ballot access and core political speech, in violation of the First and Fourteenth Amendments. (*Id.* at 33–35).

Plaintiffs subsequently moved for a preliminary injunction, asking the Court to intervene on an emergency basis before deciding the merits of the case. (Dkt. 10). Plaintiffs request that the Court either (1) "issue a preliminary injunction directing Defendants to place Collier on the November 3, 2026 general election ballot for the office of Lieutenant Governor" or (2) "preliminarily enjoin Defendants from enforcing § 142.006 and § 142.007 as applied to Collier in the 2026 election cycle," directing Defendants to extend the filing deadline for Collier by eighty-three days, to September 16, 2026, and to lower the signature requirement for Collier to appear on the ballot from 83,030 to 5,000 signatures. (*Id.* at 24–25).

---

[1] In a sworn declaration, Collier indicates that he submitted 5,522 signatures, but the Texas Secretary of State's Elections Division accepted only roughly one third of those signatures, for reasons that were not disclosed to Collier or his campaign. (2d Decl. of Collier, Dkt. 23-4, at 1–2).

3

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). A movant cannot be granted a preliminary injunction unless it can establish that it will suffer irreparable harm without an injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

The Fifth Circuit has generally explained that "the function of a preliminary injunction is to preserve the status quo pending a trial on the merits." *Collum v. Edwards*, 578 F.2d 110, 113 (5th Cir. 1978); *see also Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971) ("The purpose of a preliminary injunction is to preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits."). And while the Fifth Circuit has recognized that preliminary injunctions may at times need to overturn the existing status quo to prevent an irreparable injury, even there it has pointed to caselaw allowing the court to "return[] to the last uncontested status quo between the parties," and emphasized that "[t]he primary justification for granting a preliminary injunction is to preserve the court's ability to render a meaningful decision after a trial on the merits." *See Canal Auth. of State of Fla. v. Callaway,* 489 F.2d 567, 576 (5th Cir. 1974) (citing *Ross-Whitney Corp. v. Smith Kline & French Lab'ys.*, 207 F.2d 190 (9th Cir. 1953).

### III. DISCUSSION

The evidence introduced by Plaintiffs, even at this early stage of the case, tends to show a concerningly persistent pattern of exclusion of independent candidates from the ballot; the imposition of extremely high and unequal costs on independent candidates; and a resulting potential reduction in opportunities to take part in the political process for independent candidates in Texas and their supporters. Plaintiffs allege that an independent candidate for statewide office faced with the requirements that Collier must meet has never succeeded in reaching the ballot. (Compl., Dkt. 1, at 2). Collier was quoted costs of potentially millions of dollars to contract with a firm for a full petitioning drive—costs that major-party candidates would not face. And Collier did attempt to collect signatures at a cost per signature that, had he successfully collected enough signatures to qualify for the ballot, would have generated a total cost of some $2,430,900.[2] The Supreme Court has long recognized that voting is "a fundamental political right, because [it is] preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). Or, as the Fifth Circuit has explained, "[v]oting is of the most fundamental significance in our constitutional system." *Texas Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996). The right to vote is, of course, implicated by restrictions on which candidates can appear on the ballot. *Id.* The concerns raised by Plaintiffs here therefore go to deeply important questions at the heart of the democratic process and the Constitution's protections.

However, a preliminary injunction is an extraordinary remedy, and plaintiffs must meet strict requirements to show that they are entitled to such relief. The Court concludes that Plaintiffs have not made that showing.

---

[2] And, this estimate ignores the fact that Collier would have needed to collect far more signatures to account for disqualifications.

First, as discussed above, the purpose of a preliminary injunction is generally to preserve the status quo. *See, e.g., Collum*, 578 F.2d at 113 ("the function of a preliminary injunction is to preserve the status quo pending a trial on the merits."). Here, neither form of relief requested by Plaintiffs would have that effect. Collier is not currently on the ballot. To place him on the ballot in an effort to preserve the status quo would be to conclude—having first assumed Texas's current requirements to be unconstitutional—that Collier would necessarily have met any hypothetical constitutionally permissible requirements Texas might have enacted in the absence of its current petitioning regime. Likewise, to suspend Texas's filing deadline and lower the signature requirement to 5,000 signatures would be for the Court to create an alternative petitioning scheme out of whole cloth. Either form of relief would go far beyond preserving the status quo and would, in effect, grant Plaintiffs the relief they seek on the merits, instead of simply preserving the Court's ability to hear the merits at a later date. The Court therefore concludes that either form of relief would be poorly matched to the purposes of a preliminary injunction.[3]

Additionally, the Court concludes that the injury to Plaintiffs, for purposes of the preliminary injunction motion, depends in no small degree on whether Collier would have been on the ballot under some hypothetical alternative scheme—assuming, again, that Texas's current petitioning restrictions are unconstitutional. If Collier would not be on the ballot this fall even under a hypothetical constitutional set of requirements, he is not suffering harm that would be avoided by

---

[3] The Court also notes that the procedural posture of this case makes it distinct from the cases Plaintiffs have cited for the proposition that courts can and do grant relief by placing candidates on the ballot. (*See* Mot. Prelim. Inj., Dkt. 10, at 23–25). In the most prominent such case, Justice Powell, writing as a Circuit Justice, granted relief after a three-judge panel and the Fifth Circuit had heard the case. *See McCarthy v. Briscoe*, 429 U.S. 1317, 1318 (1976). *Briscoe* is also potentially factually distinct, in that it involved a law facially barring independent candidates from the ballot (requiring all presidential candidates to be members of a political party), a type of law the Supreme Court had already "flatly rejected." *Id.* Likewise, *Goldman-Frankie v. Austin*, 727 F.2d 603, 607 (6th Cir. 1984), was an appeal from a denial of summary judgment (not a preliminary injunction); dealt with a situation where there was no procedure under state law for an independent candidate to be placed on the ballot; and cited only to *Briscoe* as support for the relief of placing a candidate on the ballot.

the Court placing him on the ballot or suspending Texas's regulations to allow him to continue petitioning.

Because determining the relevant injury to Plaintiffs at this stage would require the Court to delve into hypotheticals, the Court cannot clearly conclude that Collier and his supporters will likely suffer irreparable harm in the absence of an injunction, nor can it properly weigh the balance of equities. If Collier was improperly excluded by an unconstitutional scheme, the balance of equities clearly tips in Plaintiffs' favor, not least because Texas cannot have a strong interest in enforcing unconstitutional laws. *See Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 784 (5th Cir. 1990) (states faced no injury from injunction of preempted regulation); *United States v. Alabama*, 691 F.3d at 1301 ("[W]e discern no harm from the state's nonenforcement of invalid legislation."). However, if Collier would not have gained access to the ballot even under a less restrictive set of requirements, he and his supporters are not harmed by his continued exclusion, and the balance of equities of adding him to the ballot now cannot tip in his favor. In that sense, Collier also cannot show irreparable harm, because he cannot show that but for Texas's allegedly unconstitutional scheme, he would be on the ballot—and therefore cannot clearly show that he or the other plaintiffs are harmed by his exclusion from the ballot. *See Janvey v. Alguire*, 647 F.3d 585, 601 (5th Cir. 2011) ("The party seeking a preliminary injunction must also show that the threatened harm is more than mere speculation."). As such, the Court cannot conclude that Plaintiffs have carried their burden on either of these two elements sufficiently for the Court to grant the extraordinary relief of a preliminary injunction.

Having determined that Plaintiffs cannot meet their burden on these elements of the preliminary injunction analysis, the Court does not reach the remaining elements. *See Mann v. Louisiana High Sch. Athletic Ass'n*, 535 F. App'x 405, 412 n.2 (5th Cir. 2013) (declining to reach the remaining elements of the preliminary injunction analysis where a plaintiff failed to meet his burden on one element.).

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Plaintiffs' Motion for Preliminary Injunction,

(Dkt. 10), is **DENIED**.

**SIGNED** on August 10, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE