IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL EDWARD COLLIER, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:26-CV-1574-RP |
| | § | |
| ROBERT S. HOWDEN, *in his official capacity as the Secretary of State of the State of Texas*, et al.,[1] | § | |
| | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Robert S. Howden and Dave Nelson's ("Defendants") Motion to Dismiss under Fed. R. Civ. P. 12(b)(1). (Dkt. 28). Having considered the parties' briefs, the record, and the relevant law, the Court will deny the motion.

**I. BACKGROUND**

Plaintiff Michael Edward Collier ("Collier") sought to run for Lieutenant Governor of Texas as an Independent in the 2026 election. (Compl., Dkt. 1, at 1). But Texas imposes certain prerequisites for Independent candidates to appear on its ballots. This case involves three requirements in the Texas Election Code that Collier calls "practically impossible to meet." First, Section 142.006 gives Independent candidates a limited window to apply for their place on the ballot: "not later than 5 p.m. of the 30th day after runoff primary election day." Tex. Elec. Code. § 142.006. Second, before an Independent candidate can submit their application, Section 142.007 requires a petition with signatures totaling at least "one percent of the total vote received by all candidates for governor in the most recent gubernatorial general election[.]" Tex. Elec. Code. § 142.007. And third, Section 142.009 limits who can sign that petition, invalidating signatures by (1)

[1] Robert S. Howden, the new Texas Secretary of State as of July 18, 2026, is substituted as defendant in place of Jane Nelson (the former Secretary sued in her official capacity). *See* Fed. R. Civ. P. 25(d).

anyone who signs on or before primary election day, or runoff primary election day if a runoff occurs, or (2) anyone who voted in the primary of a political party that nominated someone for the same office the prospective candidate seeks. Tex. Elec. Code. § 142.009.

Under Section 142.007, Collier needed 81,030 valid petition signatures before his name could appear on the ballot. (Compl., Dkt. 1, at 1–2). And under Sections 142.006 and 142.009, because there was a primary runoff in Collier's race, he had just thirty days to collect them all. (Compl., Dkt. 1, at 2). Collier argues these provisions are "insurmountable" obstacles. (Compl., Dkt. 1, at 2). He notes that "no Independent candidate for statewide office has ever qualified for the ballot in Texas in a race that had a primary runoff" like this year's Lieutenant Governor race, (Compl., Dkt. 1, at 2), and that "[e]ven with the full petitioning period . . . the last such candidate to qualify was in 2006, 20 years ago, when only 45,540 signatures were required," (Mot. Prelim. Inj., Dkt. 10, at 7).

Collier, and numerous co-plaintiffs who want to vote for him (together, "Plaintiffs"), filed this case alleging that Texas's requirements violate the First and Fourteenth Amendments by unconstitutionally restricting ballot access and core political speech. (Compl., Dkt. 1, at 33–35). Plaintiffs soon moved for a preliminary injunction. They asked this Court to either (1) "direct[] Defendants to place Collier on the November 3, 2026 general election ballot for the office of Lieutenant Governor" or (2) preliminarily enjoin Defendants from enforcing § 142.006 and § 142.007 as applied to Collier in the 2026 election cycle." (Mot. Prelim. Inj., Dkt. 10, at 24–25). After a preliminary injunction hearing on July 28, 2026, the Court denied relief, but it noted that Plaintiffs' evidence, "even at this early stage of the case, tends to show a concerningly persistent pattern of exclusion of independent candidates from the ballot; the imposition of extremely high and unequal costs on independent candidates; and a resulting potential reduction in opportunities to take part in the political process for independent candidates in Texas." (Order, Dkt. 26, at 5).

Now before the Court is Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(1), filed on September 21, 2026. (Dkt. 28). Defendants argue Plaintiffs' claims have become moot because (a) the statutory deadlines to appear on the ballot, or to register as a write-in candidate, have passed, (*id.* at 8–9); (b) ballots have already been sent out without Collier's name on them, (*id.* at 9–10); and (c) Plaintiffs did not appeal this Court's denial of a preliminary injunction, (*id.* at 10–11). In response, Plaintiffs concede that relief for this election is moot, but reiterate that they "seek declaratory relief and permanent injunctive relief that will redress Plaintiffs' injuries in future election cycles." (Resp. in Opp., Dkt. 29, at 8 (emphasis added)). Plaintiffs also argue that "this case falls squarely within the exception to mootness for controversies that are capable of repetition yet evading review." (*Id.* at 10). In reply, Defendants repeat that this case is moot since "Collier did not take the reasonable steps a serious and committed candidate would take to keep their candidacy—that is, the controversy at the core of this case—alive," (Reply, Dkt. 30, at 4), and they contend that *Trump v. CASA*, 606 U.S. 831 (2025) bars Plaintiffs from seeking prospective relief that benefits nonparties under a "capable of repetition yet evading review" theory of standing, (*id.* at 7–9).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that

jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

Article III's case-or-controversy requirement makes mootness "a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (internal quotation marks and citation omitted). "At all stages of litigation, a plaintiff must maintain a personal interest in the dispute." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021). "[I]f in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot" and the court loses jurisdiction. *Id.*

"Many claims that implicate election laws, however, fall within an exception to the mootness doctrine for the class of controversies capable of repetition, yet evading review." *Kucinich v. Texas Democratic Party*, 563 F.3d 161, 164 (5th Cir. 2009) (internal quotation marks and citations omitted). This exception is "limited to the situation where two elements combine[]: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject[] to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

## III. DISCUSSION

Plaintiffs sought both preliminary injunctive relief (to give Collier ballot access for this election) and permanent injunctive relief (to aid ballot access in future elections). As for "preliminary injunctive relief sufficient to remedy their immediate injury—Collier's exclusion from the 2026 general election ballot"—Plaintiffs themselves concede that "the passage of time has rendered that

request moot because it can no longer be granted." (Resp. in Opp., Dkt. 29, at 9).[2] But the Court agrees that this controversy is clearly "capable of repetition, yet evading review." That means Plaintiffs' claims for permanent injunctive relief are not moot.

First, "[c]ontroversy surrounding election laws . . . is one of the paradigmatic circumstances in which the Supreme Court has found that full litigation can never be completed before the precise controversy (a particular election) has run its course." *Carmouche*, 449 F.3d at 661; *see also id.* at 661 n.6 (collecting cases); *Morial v. Judiciary Comm'n of State of La.*, 565 F.2d 295, 297 (5th Cir. 1977) ("Suits challenging the validity of state election laws are classic examples of cases in which the issues are 'capable of repetition, yet evading review.'"). That is the case here too, which Defendants do not contest.

Second, Plaintiffs specifically allege they will repeat the same actions which spawned this litigation. Collier pleads in no uncertain terms that he "wants to run for office in future elections in Texas as an Independent." (Compl., Dkt. 1, at 6). And every single plaintiff pleads a specific, individual "inten[t] to vote . . . in future elections" for candidates potentially including "Independents and [others] running outside the Democratic and Republican parties." (*Id.* at 5–10).

---

[2] Defendants also note that "Collier did not take any steps to be certified as a write-in candidate for the November 2026 General Election," and that "Plaintiffs declined to appeal the denial of their motion for preliminary injunction." (Resp. in Opp., Dkt. 29, at 4–5). These facts do not affect the mootness analysis for two reasons.

First, Collier sought to appear on the ballot, not to run as a write-in candidate. Full ballot access confers markedly more visibility and access to the electorate than eligibility for write-in votes alone. Collier's failure to pursue write-in eligibility cannot moot his claims for "true" ballot access because one is not a substitute for the other.

Second, as for Plaintiffs "declin[ing] to appeal" the denial of preliminary relief, Plaintiffs themselves acknowledge that form of relief is moot (as just discussed). But permanent relief is another story. "A suit may become moot only as to a particular form of relief." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). Even if Plaintiffs' claims for preliminary relief cannot proceed, that does not bear on their claims for permanent relief in the election context, "one of the paradigmatic circumstances in which . . . full litigation can never be completed before the precise controversy (a particular election) has run its course." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006).

At the motion to dismiss stage, the Court takes these allegations as true. *See Birnberg*, 667 F.3d at 600 ("We are at the motion to dismiss stage . . . and 'courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint.'" (quoting *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)). Given each individual plaintiff's stated intent, there is a sufficient "reasonable expectation that the same complaining part[ies] [will] be subject[] to the same action again." *See Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

Defendants accuse Plaintiffs of trying to "maintain standing by relying on their speculative injuries (or the injuries of nonparties) for years into the future" (Reply, Dkt. 30, at 7), violating *Trump v. CASA, Inc.*, 606 U.S. 831. This argument fails. In prior "capable-of-repetition-yet-evading-review" cases, the Supreme Court has sometimes "dispensed with the same-party requirement and focused 'instead upon the great likelihood that the issue will recur between the defendant and other members of the public at large.'" *Birnberg*, 667 F.3d at 596 (quoting *Kucinich*, 563 F.3d at 165). Defendants claim *Trump v. CASA* narrowed that path by barring injunctions broader than "necessary to provide complete relief *to the plaintiffs*." *CASA*, 606 U.S. at 852 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (citation modified)). But *CASA* poses no jurisdictional hurdle here. These Plaintiffs claim they will personally repeat the same actions which yielded their alleged injuries. Even if *Trump v. CASA* does limit standing for injuries primarily "capable of repetition" against nonparties, these Plaintiffs' claims rest on future harm specific to them. The mere possibility that a nonparty might benefit does not negate Plaintiffs' standing to challenge their own injury. *See CASA*, 606 U.S. at 852 ("[W]hile the court's injunction might have the practical effect of benefiting nonparties, that benefit is merely incidental." (citation modified) (emphasis in original)).

Moreover, under well-settled "capable-of-repetition-yet-evading-review" precedent, *future* harm does not necessarily mean *speculative* harm that defeats standing. The doctrine aims at reasonably certain future harms whose dimensions are concrete because they have happened before.

*See Kucinich*, 563 F.3d at 164 (citing election cases that were not moot when "each particular plaintiff had specifically alleged a likelihood that he would again be adversely affected by the challenged law"). The claims here fit that category.

## IV. CONCLUSION

At least at this stage, the Court "must limit [its] inquiry to the facts stated in the complaint," which sufficiently pleads a controversy that is capable of repetition yet evading review as against these specific plaintiffs. *See Birnberg*, 667 F.3d at 600; *see also Morial*, 565 F.2d at 297 n.3 ("[T]his case is not moot, since the issues properly presented, and their effects on independent candidacies, will persist as the [Texas] statutes are applied in future elections."). It is therefore **ORDERED** that Defendants' Motion to Dismiss, (Dkt. 28), is **DENIED**.

**SIGNED** on October 21, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE